## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **LULA MITCHELL, LARRY JOHNSON,** ) | |
| **JOYCE JOHNSON,** ) | |
| **THELMA PETTY-COSEY,** ) | |
| **SARAH ROBERSON,** ) | |
| **MAURICE WILLIAMS,** ) | |
| **TELECIA HARDY,** ) | |
| **individually and on behalf of** ) | |
| **others similarly situated,** ) | |
| ) | **Case No. _____** |
| **Plaintiffs,** ) | |
| ) | **JURY DEMAND** |
| **v.** ) | |
| ) | |
| **ALLSTATE VEHICLE AND PROPERTY** ) | |
| **INSURANCE COMPANY, ALLSTATE** ) | |
| **INSURANCE COMPANY, and** ) | |
| **ESURANCE INSURANCE COMPANY,** ) | |
| ) | |
| **Defendants.** ) | |

### CLASS ACTION COMPLAINT

COME NOW Plaintiffs Lula Mitchell, Larry Johnson, Joyce Johnson, Thelma Petty-Cosey, Sarah Roberson, Maurice Williams, and Telecia Hardy, individually and on behalf of others similarly situated (collectively "Plaintiffs"), and for their Complaint against Allstate Vehicle and Property Insurance Company ("AVPIC"), Allstate Insurance Company ("AIC") and Esurance Insurance Company ("Esurance") (collectively "Defendants" or "Allstate"), and state and allege the following:

### PARTIES, RESIDENCY, JURISDICTION AND VENUE

1. Plaintiff Lula Mitchell ("Mitchell") is a citizen and resident of Valley Grande, Alabama. At all times relevant hereto, Mitchell owned the dwelling and other structures located at 2937 County Road 81, Valley Grande, Alabama (the "Insured Mitchell Property").

2. Plaintiffs Larry Johnson and Joyce Johnson (the "Johnsons") are citizens and residents of Montgomery, Alabama. At all times relevant hereto, the Johnson owned the dwelling and other structures located at 701 Spring Valley Road, Montgomery, Alabama (the "Insured Johnson Property").

3. Plaintiff Thelma Petty-Cosey ("Petty-Cosey") is a citizen and resident of Huntsville, Alabama. At all times relevant hereto, Petty-Cosey owned the dwelling and other structures located at 2213 Harris Road NW, Huntsville, Alabama (the "Insured Petty-Cosey Property").

4. Plaintiff Sarah Roberson ("Roberson") is a citizen and resident of Troy, Alabama. At all times relevant hereto, Roberson owned the dwelling and other structures located at 627 Barron Road, Troy, Alabama (the "Insured Roberson Property").

5. Plaintiff Maurice Williams ("Williams") is a citizen and resident of Bessemer, Alabama. At all times relevant hereto, Williams owned the dwelling and other structures located at 3604 Hilltop Road SE, Bessemer, Alabama (the "Insured Williams Property").

6. Plaintiff Telecia Hardy ("Hardy") is a citizen and resident of Talladega, Alabama. At all times relevant hereto, Hardy owned the dwelling and other structures located at 919 Cruikshank Street, Talladega, Alabama (the "Insured Hardy Property").

7. Defendants are all affiliated insurance companies within the Allstate insurance group. Defendants are all authorized to sell property insurance policies in the State of Alabama, and are engaged in the insurance business in the State of Alabama.

8. Defendants engaged in the challenged claims handling practice described herein in a uniform matter and pursuant to a uniform policy. Defendants collectively operate a centralized

claims adjustment operation in which their adjusters work on claims for multiple different entities, including each of the Defendants, using the same policies and procedures challenged in this case.

9. Defendant AVPIC is organized under the laws of the State of Illinois with its principle place of business in Northbrook, Illinois.

10. Defendant AIC is organized under the laws of the State of Illinois with its principle place of business in Northbrook, Illinois.

11. Defendant Esurance is organized under the laws of the State of California with its principle place of business in San Francisco, California.

12. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring contractual and declaratory relief claims on behalf of themselves and a putative class of Defendants' property insurance policyholders who are similarly situated.

13. Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). There are more than 100 members in the proposed class and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

14. This Court has personal jurisdiction over the Defendants because they have availed themselves of the privilege of conducting business and issuing insurance contracts covering structures in the State of Alabama.

15. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Additionally, Defendants have insurance agents and adjusters in the Northern Division of the Southern District of Alabama for the conduct of their usual and customary business, including the sale of property insurance policies and the handling of claims submitted on such policies.

# FACTS

### A. Introduction and Scope of Lawsuit

16. Defendants sell property insurance coverage for, *inter alia*, homes and buildings in Alabama. This lawsuit only concerns first-party insurance coverage for structures located in Alabama.

17. This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

18. Further, this lawsuit only concerns claims wherein Defendants themselves accepted coverage and then Defendants chose to calculate its actual cash value ("ACV") payment obligations exclusively pursuant to the replacement cost less depreciation methodology.

### B. The Mitchell Insurance Policy and Loss

19. Mitchell contracted with AVPIC for an insurance policy providing coverage for certain losses to the Insured Mitchell Property. The policy number was 815 666 027 (the "Mitchell Policy").

20. Mitchell paid AVPIC premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

21. On or about October 28, 2020, the Insured Mitchell Property suffered damage covered by the Mitchell Policy. The damage to the Insured Mitchell Property required replacement and/or repair.

22. Mitchell timely submitted a claim to AVPIC requesting payment for the covered loss.

23. AVPIC determined the loss to the Insured Mitchell Property was covered by the terms of the Mitchell Policy.

24. The Mitchell Policy does not contain a labor depreciation permissive form.

### C. The Johnson Insurance Policy and Loss

25. The Johnsons contracted with AVPIC for an insurance policy providing coverage for certain losses to the Insured Johnson Property. The policy number was 810 526 480 (the "Johnson Policy").

26. Johnsons paid AVPIC premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

27. On or about May 18, 2018, the Insured Johnson Property suffered damage covered by the Johnson Policy. The damage to the Insured Johnson Property required replacement and/or repair.

28. The Johnsons timely submitted a claim to AVPIC requesting payment for the covered loss.

29. AVPIC determined the loss to the Insured Johnson Property was covered by the terms of the Johnson Policy.

30. AVPIC calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then AVPIC subtracts the estimated depreciation.

31. The Johnson Policy, and the other property forms at issue in this pleading, do not permit the withholding of labor as depreciation as described below. In contrast with the Johnson Policy, certain policies of insurance expressly allow for the depreciation of "labor" as described herein. The type of form or endorsement will be referred to herein as a "labor depreciation permissive form."

32. The Johnson Policy does not contain a labor depreciation permissive form.

**D.   The Petty-Cosey Insurance Policy and Loss**

33. Petty-Cosey contracted with AIC for an insurance policy providing coverage for certain losses to the Insured Petty-Cosey Property. The policy number was 000010512188 (the "Petty-Cosey Policy").

34. Petty-Cosey paid AIC premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

35. On or about February 15, 2018, the Insured Petty-Cosey Property suffered damage covered by the Petty-Cosey Policy. The damage to the Insured Petty-Cosey Property required replacement and/or repair.

36. Petty-Cosey timely submitted a claim to AIC requesting payment for the covered loss.

37. AIC determined the loss to the Insured Petty-Cosey Property was covered by the terms of the Petty-Cosey Policy.

38. AIC calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then AIC subtracts the estimated depreciation.

39. The Petty-Cosey Policy does not contain a labor depreciation permissive form.

**E.   The Roberson Insurance Policy and Loss**

40. Roberson contracted with Esurance for an insurance policy providing coverage for certain losses to the Insured Roberson Property. The policy number was HPAL010375811 (the "Roberson Policy").

41. Roberson paid Esurance premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

42. On or about February 25, 2017, the Insured Roberson Property suffered damage covered by the Roberson Policy. The damage to the Insured Roberson Property required replacement and/or repair.

43. Roberson timely submitted a claim to Esurance requesting payment for the covered loss.

44. Esurance determined the loss to the Insured Roberson Property was covered by the terms of the Roberson Policy.

45. Esurance calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then Esurance subtracts the estimated depreciation.

46. The Roberson Policy does not contain a labor depreciation permissive form.

**F.    The Williams Insurance Policy and Loss**

47. Williams contracted with AVPIC for an insurance policy providing coverage for certain losses to the Insured Williams Property. The policy number was 810 035 624 (the "Williams Policy").

48. Williams paid AVPIC premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

49. On or about April 6, 2018, the Insured Williams Property suffered damage covered by the Williams Policy. The damage to the Insured Williams Property required replacement and/or repair.

50. Williams timely submitted a claim to AVPIC requesting payment for the covered loss.

51. AVPIC determined the loss to the Insured Williams Property was covered by the terms of the Williams Policy.

52. The Williams Policy does not contain a labor depreciation permissive form.

### G. The Hardy Insurance Policy and Loss

53. Hardy contracted with AVPIC for an insurance policy providing coverage for certain losses to the Insured Hardy Property. The policy number was 810 271 747 (the "Hardy Policy").

54. Hardy paid AVPIC premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

55. On or about March 11, 2018, the Insured Hardy Property suffered damage covered by the Hardy Policy. The damage to the Insured Hardy Property required replacement and/or repair.

56. Hardy timely submitted a claim to AVPIC requesting payment for the covered loss.

57. AVPIC determined the loss to the Insured Hardy Property was covered by the terms of the Hardy Policy.

58. The Hardy Policy does not contain a labor depreciation permissive form.

### H. Defendants' Calculation of Plaintiffs' ACV Payments

59. In adjusting the Plaintiffs' respective claims, the Allstate-affiliated Defendants affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate each respective loss and to make their respective ACV payments. Defendants did not use any other methodology to calculate Plaintiffs' respective ACV payments.

60. Soon after the Plaintiffs' respective losses, Defendants sent adjusters to inspect the damage and estimate ACV.

61. The Defendants all used the same commercially-available computer software to estimate their replacement cost value ("RCV"), depreciation, and ACV calculations. The software used to calculate the payment to the Plaintiffs is called Xactimate®.

62. As set forth in each of the written Xactimate® estimates provided to each of the Plaintiffs by the respective Defendants, the Defendants determined that each of the Plaintiffs had suffered a covered loss to their property. The Xactimate® estimates generated by the Defendants included the cost of materials and labor required to complete the repairs (the "RCV").

63. In calculating their respective ACV payment obligations to the Plaintiffs, Defendants utilized Xactimate® to determine the depreciation to subtract from the RCV. Plaintiffs were underpaid on their ACV claims, and deprived of the use of their money from the time they should have received it until the date they recover the wrongfully withheld amounts, as more fully described below.

    **I.    Defendants' Practice Of Withholding Labor As Depreciation**

64. When they calculated Plaintiffs' ACV benefits owed under Plaintiffs' policies, Defendants withheld costs for both the materials and labor required to repair or replace buildings and structures as depreciation, even though labor does not depreciate in value over time. Defendants withheld labor costs throughout its ACV calculations as depreciation.

65. Like all property insurance claims estimating software, Xactimate® allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation option setting preferences.

66. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

67. Defendants' withholding of labor costs as depreciation associated with the repair or replacement of Plaintiffs' respective structures resulted in Plaintiffs receiving payment for their respective losses in amounts less than they were entitled to receive under their respective policies. Defendants breached their respective obligations under the Plaintiffs' policies by improperly withholding the cost of labor as depreciation.

68. Plaintiffs themselves cannot determine the precise amount of labor that has been withheld based only upon the written estimate provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue (Xactimate®), as well as the electronic file associated with the respective estimate.

69. While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold labor as depreciation under the policy forms at issue when the carrier chooses to use a replacement cost less depreciation methodology.

70. Defendants' failures to pay the full cost of the labor necessary to return Plaintiffs' structures to the *status quo ante* left Plaintiffs under-indemnified and underpaid for their respective losses.

71. Plaintiffs dispute whether portions of the labor, as determined by Defendants themselves, may be withheld by Defendants as "depreciation" from Defendants' ACV payment under the terms and conditions of Plaintiffs' respective insurance policies.

72. Labor, by its nature, does not depreciate, and an insurer therefore may not withhold labor as depreciation. For example, materials used in the repair or replacement of a roof (roofing shingles) diminish in value over time due to the wear that age and use inflict on them. In contrast, labor is not susceptible to aging or wear, it does not lose its value over time, and there is no depreciable life of labor. Labor's value does not diminish over time; only the materials depreciate.

73. Defendants' practice of withholding labor costs as depreciation is inconsistent with the universally accepted premise that the fundamental purpose of property insurance is to provide indemnity to policyholders. To indemnify means to put the insured back in the position he or she enjoyed before the loss—no better and no worse. A policy, like Defendants' policies, that provide for payment of the ACV of a covered loss is an indemnity contract because the purpose of an ACV payment is to make the insured whole after the loss that occurred.

74. While an insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold labor as depreciation. Defendants' failure to pay the full cost of the labor necessary to return Plaintiffs back to their pre-loss condition left Plaintiffs under-indemnified and underpaid for their respective losses.

75. Defendants materially breached their duty to indemnify Plaintiffs by withholding labor costs from ACV payment as depreciation, thereby paying less than Plaintiffs were entitled to receive under the terms of Plaintiffs' respective policies, including but not limited to depriving Plaintiffs of the time use of money resulting from the time periods of labor withholdings in the form of prejudgment interest.

## AMOUNT IN CONTROVERSY

76. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

77. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

78. The proposed class that Plaintiffs seek to represent is tentatively defined as follows:

All AVPIC, AIC and Esurance policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in Alabama; and (2) for which a Defendant accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and (3) which resulted in an actual cash value payment during the class period from which "non-material depreciation" was withheld from the policyholder; or which would have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.

The class period for the proposed class is the maximum time period as allowed by applicable law.

The class excludes any claims for which the applicable limits of insurance was exhausted by the initial actual cash value payment. The class also excludes any claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form.

79. Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

80. Plaintiffs and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

81. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people geographically dispersed across Alabama have been damaged by Defendants' actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Defendants or from information readily available to Defendants.

82. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

83. Defendants have acted on grounds generally applicable to the proposed class in that Defendants have routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Defendants will

continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

84.  Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a.  Whether Defendants' policy forms allow the withholding of labor costs in the calculation of ACV payments under the replacement cost less depreciation methodology;

   b.  Whether Defendants' policy language is ambiguous;

   c.  Whether Defendants' withholding of labor costs in the calculation of ACV payments breaches the Defendants' insurance policy forms;

   d.  Whether Defendants have a custom and practice of withholding labor costs in the calculation of ACV payments;

   e.  Whether Plaintiffs and members of the proposed class have been damaged as a result of Defendants' withholding of labor costs in the calculation of ACV payments owed; and

   f.  Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

85.  Plaintiffs' claims are typical of the claims of the proposed class members, as they are all similarly affected by Defendants' customs and practices concerning the withholding of labor. Further, Plaintiffs' claims are typical of the claims of the proposed class members because Plaintiffs' claims arose from the same practices and course of conduct that give rise to the claims

of the members of the proposed class and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

86.     Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiffs reserve the right to have unnamed class members join them in seeking to be a class representative.

87.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

88.     In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary

adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

89. Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Defendants' unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

90. Class certification is further warranted because Defendants have acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

91. Plaintiffs may seek, in the alternative, certification of issues classes. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I - BREACH OF CONTRACT

92. Plaintiffs restate and incorporate by reference all preceding allegations.

93. Defendants entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between Defendants and Plaintiffs, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

94. These policies of insurance are binding contracts under Alabama law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

95. Defendants drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss when Defendants is calculating ACV under a replacement cost less depreciation methodology.

96. In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiffs and the putative class members complied with all material provisions and performed all their respective duties with regard to their insurance policy.

97. Defendants breached their respective contractual duties to pay Plaintiffs and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

98. Additionally, Defendants' actions in breaching its contractual obligations to Plaintiffs and members of the proposed class benefitted and continue to benefit Defendants. Likewise, Defendants' actions damaged and continue to damage Plaintiffs and members of the proposed class.

99. Defendants' actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

100. In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

## COUNT II - DECLARATORY JUDGMENT AND RELIEF

101. Plaintiffs restate and incorporate by reference all preceding allegations.

102. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

103. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

104. Plaintiffs and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

105. Plaintiffs seek, individually and on behalf of the proposed class, a declaration that Defendant's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

106. Plaintiffs further seeks, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

107. Plaintiffs and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiffs as the representative of the class, and appointing Plaintiffs' attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that Defendants withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Plaintiffs and members of the class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that Defendants specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of their past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

6. Award compensatory damages to Plaintiffs for all amounts to which they are entitled;

7. Award costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

8. Pre- and Post-Judgment interest; and

9. Grant such further and additional relief as the Court deems necessary and proper.

        Respectfully submitted,

        */s/ William D. Buckley, III* _____
        WILLIAM D. BUCKLEY
        (AL Bar #5127HOOV)
        J. BRANDON McWHERTER*
        (TN Bar #21600)
        **McWHERTER SCOTT BOBBITT PLC**
        341 Cool Springs Blvd., Suite 230
        Franklin, TN 37067
        (615) 354-1144
        trey@msb.law
        brandon@msb.law

        T. JOSEPH SNODGRASS*
        (MN Bar #231071)
        **LARSON • KING, LLP**
        30 E. 7th Street, Suite 2800
        St. Paul, MN 55101
        (651) 312-6500
        jsnodgrass@larsonking.com

        ERIK D. PETERSON*
        (KY Bar 93003)
        **Mehr, Fairbanks & Peterson**
        ** Trial Lawyers, PLLC**
        201 West Short Street, Suite 800
        Lexington, Kentucky 40507
        (859) 225-3731
        edp@austinmehr.com

        **\*to be admitted** *pro hac vice*

        *Attorneys for Plaintiff and*
        *Putative Class Representative*