UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LULA MITCHELL, LARRY JOHNSON, JOYCE JOHNSON, THELMA PETTY-COSEY, SARAH ROBERSON, MAURICE WILLIAMS, TELECIA HARDY, individually and on behalf of others similarly situated, | § § § § § § § § | |
| *Plaintiffs,* | § § | Case No. 2:21-cv-00347-B |
| v. | § § | |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, and ESURANCE INSURANCE COMPANY, | § § § § § | |
| *Defendants.* | § § | |

**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS AND RULE 23(d)(1)(D) MOTION TO STRIKE CLASS ALLEGATIONS AND BRIEF IN SUPPORT**

Kermit L. Kendrick (ASB-3553-T41K)
BURR & FORMAN LLP
Wells Fargo Tower, Suite 3400
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Fax: (205) 244-5665
kkendric@burr.com

Roger D. Higgins (TBN 09601500)*
Elizabeth Lee Thompson (TBN 00788290)*
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201-2832
Telephone: (214) 871-8229
Fax: (214) 871-8209
rhiggins@thompsoncoe.com
lthompson@thompsoncoe.com
* Admitted Pro Hac Vice

Mary-Ellen King (ASB-7221-M72H)
THOMPSON, COE, COUSINS & IRONS, L.L.P.
701 Brazos Street, Suite 1500
Austin, Texas 78701
Telephone: (512) 827-2305
mking@thompsoncoe.com

**Counsel for Defendants Allstate Vehicle and Property Insurance Company, Allstate Insurance Company, and Esurance Insurance Company**

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................ii

TABLE OF AUTHORITIES .................................................................................. iv

I.      SUMMARY OF THE ARGUMENTS ..................................................1

II.     FACTUAL BACKGROUND ..................................................................4

III.    ARGUMENTS AND AUTHORITIES....................................................7

     A.     Standard for Rule 12(b)(6) dismissal and Alabama law of
          insurance contract construction................................................................7

     B.     Plaintiffs' breach of contract claim fails as a matter of law because
          the Policy, the governing Alabama regulation, and dictionary
          definitions all support that a reasonable insured would reasonably
          construe calculating ACV under the Policy to include depreciation
          on the value of the damaged property as a whole, including labor
          costs, which constituted a portion of the property's value..........................9

          1.     A textual analysis of the Policy demonstrates that
               reasonable insured would reasonably construe the Policy to
               provide for depreciation of labor costs. ...........................................9

               a.     No reasonable insured would reasonably construe
                    the Policy to provide that the insured was entitled to
                    be paid for labor costs that the insured has not
                    incurred. ..........................................................................11

               b.     Plaintiffs erroneously import a purported "physical"
                    distinction to the ACV measurement that the Policy
                    language nowhere mentions and does not
                    reasonably support when read by a reasonable
                    insured. ...........................................................................12

               c.     The Alabama Supreme Court has implicitly
                    endorsed labor depreciation of replacement costs. ............13

               d.     Alabama law and Alabama federal court decisions
                    confirm that the ACV and RCV provisions in the
                    Policy are unambiguous, valid, and enforceable. ..............14

           2.     The governing Alabama regulation requires ACV to be
                calculated as "replacement cost of property minus

depreciation" with no distinction between the type of "replacement cost of property" to which "depreciation" applies. .......................................................................15

3. The ordinary dictionary meaning of ACV and depreciation likewise supports the propriety of depreciating labor costs under the Policy. ....................................................18

4. The motion to dismiss holdings in Arnold and Brasher are not applicable to this case and the dismissal in Ware supports a similar outcome here. ...................................19

5. Courts in Alabama and in other jurisdictions have long-recognized that depreciation properly applies to the full cost of repair or replacement when employing the cost approach to measure ACV. ...........................................22

6. Plaintiffs' incorrectly define "labor" withheld as depreciation contrary to the Policy and Alabama law. .................24

C. Plaintiffs' declaratory judgment action fails as a matter of law and should be dismissed because Plaintiffs have not asserted a viable cause of action and it is duplicative of Plaintiffs' breach of contract claim...................................................................................25

1. Plaintiffs' failure to allege a viable cause of action requires dismissal of their declaratory judgment claim. ...........................25

2. The sought declaratory relief is duplicative. ..................................25

D. Because the face of Plaintiffs' complaint demonstrates that Rule 23 class action requirements cannot be met, Plaintiffs' class allegations should be struck. ...................................................26

1. If the Court concludes that the Policy is ambiguous (which Defendants contest), then Plaintiffs' class allegations should be struck because, based on the complaint itself, the requirements of a class action cannot be met as extrinsic evidence is admissible on each claim, which defeats predominance. ...............................................................27

2. Plaintiffs' assertion that they may alternatively seek "issues classes" under Rule 23(c)(4) fails. .................................29

IV. CONCLUSION....................................................................30

CERTIFICATE OF SERVICE .......................................................32

iii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
  925 F.3d 1205 (11th Cir. 2019) (citing 28 U.S.C. §2201)) ....................................25

*Accardi v. Hartford Underwriter Ins. Co.*,
  838 S.E.2d 454 (N.C. 2020)..............................................................................13, 23

*Alfa Life Ins. Corp. v. Johnson*,
  822 So. 2d 400 (Ala. 2001)...............................................................................27, 28

*Alpine Const. Co. v. Water Works Bd.*,
  377 So.2d 954 (Ala. 1979)........................................................................................28

*Arnold v. State Farm Fire & Cas. Co.*,
  268 F. Supp. 3d 1297 (S.D. Ala. 2017)...........................2, 9, 16, 17, 18, 19, 20, 22

*Arnold v. State Farm Fire & Cas. Co.*,
  No. 17-0148-WS-C, 2017 WL 5451749 (S.D. Ala. Nov. 14, 2017) ................22, 23

*Ashcroft v. Isbal*,
  556 U.S. 662 (2009).....................................................................................................7

*Baldwin Mut. Ins. Co. v. Adair*,
  181 So. 3d 1033 (Ala. 2014).................................................................................9, 28

*Baldwin Mut. Ins. Co. v. McCain*,
  176 So. 3d 1195 (Ala. 2015)......................................................................................13

*Baldwin Mut. Ins. Co. v. McCain*,
  260 So. 3d 801 (Ala. 2018)..........................................................................1, 13, 14, 24

*Ballard v. Lee*,
  671 So. 2d 1368 (Ala. 1995)......................................................................................22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................7

*Blevins v. State Farm Fire & Cas. Co.*,
  No. CV-86-DT-0114-M (N.D. Ala. Aug. 22, 1982)................................................15

*Branch v. Farmers Ins. Co.*,
  55 P.3d 1023 (Okla. 2002)..............................................................................13, 14, 24

*Brasher v. Allstate Indem. Co.*,
    No. 4:18-cv-00576-ACA, 2018 WL 5629918 (N.D. Ala. 2018) ................................3, 19, 20

*Butler v. Travelers Home & Marine Ins. Co.*,
    858 S.W.2d 407 (S.C. 2021) ........................................................................................13, 23

*Cherokee Farms, Inc. v. Fireman's Fund Ins. Co.*,
    526 So. 2d 871 (Ala. 1988) .................................................................................................15

*Clark v. McDonald's Corp.*,
    213 F.R.D. 198 (D.N.J. 2003) .......................................................................................26, 30

*Commercial Fire Ins. Co. v. Allen*,
    1 So. 202 (Ala. 1886) ..........................................................................................................23

*Cook v. Trinity Univ. Ins. Co. of Kansas*,
    No. 7:06-CV-02029-LSC, 2007 WL 9717431
    (N.D. Ala. Dec. 13, 2007) ...................................................................................................17

*Day v. Taylor*,
    400 F.3d 1272 (11th Cir. 2005) .............................................................................................4

*Eagle Eye Outfitters, Inc. v. Cincinnati Cas. Co.*,
    No. 1:20-cv-335-ECM, 2021 WL 4443701 (M.D. Ala. Sept. 28, 2021) ..............................25

*FabArc Steel Supply, Inc. v. Composite Const. Sys., Inc.*,
    914 So. 2d 344 (Ala. 2005) .................................................................................................28

*Feaz v. Wells Fargo Bank, N.A.*,
    745 F.3d 1098 (11th Cir. 2014) ...........................................................................................27

*Fisher v. Ciba Specialty Chem. Corp.*,
    238 F.R.D. 273 (S.D. Ala. 2006) ....................................................................................29, 30

*Glens Falls Ins. Co. of N.Y. v. Garner*,
    155 So. 533 (Ala. 1934) .......................................................................................................22

*Goff v. La Salle Bank, N.A.*,
    No. 09-CV-147-TMP-WMA, 2009 WL 10688475
    (N.D. Ala. Sept. 16, 2009) ..................................................................................................26

*Graves v. Am. Family Mut. Ins. Co.*,
    686 Fed. App'x 536 (10th Cir. 2017) ..................................................................................24

*Hall v. Envtl. Litig. Grp.*,
    248 So. 3d 949 (Ala. 2017) ..................................................................................................29

*Harleysville Mut. Ins. Co. v. Dapper, LLC*,
   No. 2:09-cv-794-TFM, 2010 WL 2925779 (M.D. Ala. July 21, 2010)....................................8

*Harris v. ACCC Ins. Co.*,
   No. 2:16-cv-636-TFM, 2017 WL 4322405 (M.D. Ala. Sept. 28, 2017) .................................12

*Henn v. Am. Family Mut. Ins. Co.*,
   894 N.W.2d 179 (Neb. 2017)..................................................................................................23

*Higgins v. Nationwide Mut. Ins. Co.*,
   282 So.2d 301 (Ala. 1973) ......................................................................................................17

*Hilley v. Allstate Ins. Co.*,
   562 So. 2d 184 (Ala. 1990) ..............................................................................1, 9, 11, 15, 22

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984) ....................................................................................................................7

*HM Peachtree Corners I, LLC v. Panolam Indus. Int'l, Inc.*,
   No. 1:17-cv-1000, 2017 WL 3700304 (N.D. Ga. Aug. 28, 2017)............................................26

*Homes of Legend, Inc. v. McCollough*,
   776 So. 2d 741 (Ala. 2000) ....................................................................................................28

*Huggins v. Hanover Ins. Co.*,
   423 So.2d 147 (Ala. 1982) ...............................................................................1, 11, 15, 22, 28

*In re Initial Public Offering Securities Litigation*,
   No. 21-MC-92(SAS), 2008 WL 2050781 (S.D.N.Y. May 13, 2008)......................................26

*Jay v. United Servs. Auto. Ass'n*,
   No. 1190941, 2021 WL 2492739 (Ala. June 18, 2021)...................................7, 8, 9, 10, 12, 13

*Lackey v. Central Bank of the South*,
   710 So. 2d 419 (Ala. 1998) .............................................................................................27, 28

*Lamberts v. Coregis Ins. Co.*,
   950 So. 2d 1156 (Ala. 2006) ....................................................................................................8

*Liggans R.V. Ctr. v. John Deere Ins. Co.*,
   575 So. 2d 567 (Ala. 1991) ....................................................................................................21

*Loper v. Lifeguard Ambulance Serv., LLC*,
   No. 2:19-CV-583-CLM, 2021 WL 4458873
   (N.D. Ala. Sept. 29, 2021) ...............................................................................................25, 26

*Lowery v. Fid. Nat'l Prop. & Cas. Ins. Co.*,
   805 F.3d 204 (5th Cir. 2015) .......................................................................................15, 16, 19

*Mann v. GTE Mobilnet of Birmingham, Inc.*,
    730 So. 2d 150 (Ala. 1999) .............................................................................27, 29

*McAnerney v. Newark Fire Ins. Co.*,
    156 N.E. 902 (N.Y. 1928) ......................................................................................19

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v.*
    *Coopers & Lybrand, L.L.P.*,
    322 F.3d 147 (2nd Cir. 2003) ...................................................................................4

*Omni Ins. Co. v. Foreman*,
    802 So. 2d 195 (Ala. 2001) ....................................................................................17

*Otwell v. Ala. Power Co.*,
    747 F.3d 1275 (11th Cir. 2014) ..............................................................................25

*Papasan v. Allain*,
    478 U.S. 265 (1986) ..................................................................................................4

*Pierce-Dickerson Bonding Co. v. S. Guar. Ins. Co.*,
    503 So. 2d 1219 (Ala. 1987) ..................................................................................27

*Pittman v. State Farm Fire & Cas. Co.*,
    868 F. Supp. 2d 1335 (M.D. Ala. 2012),
    *aff'd* 519 Fed. App'x 656 (11th Cir. May 20, 2013).............................................12

*Ray v. Judicial Correction Servs., Inc.*,
    333 F.R.D. 552 (N.D. Ala. 2019) .....................................................................29, 30

*Redcorn v. State Farm Fire & Cas. Co.*,
    555 P.3d 1017 (Okla. 2002) ...................................................................................24

*Reliance Ins. Co. v. Substation Prod. Corp.*,
    404 So. 2d 598 (Ala. 1981) ....................................................................................22

*Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C.*,
    580 So. 2d 1326 (Ala. 1991) ..................................................................................17

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010) ..............................................................................28

*Safeway Ins. Co. of Ala., Inc. v. Herrera*,
    912 So. 2d 1140, 1143 (Ala. 2005)..........................................8, 18, 19, 20, 21

*Scheur v. Rhodes*,
    416 U.S. 232 (1974)...................................................................................................4

*Ex parte State Farm Fire & Cas. Co.*,
 523 So. 2d 119 (Ala. 1988) .................................................................................17

*In re State Farm Fire & Cas. Co.*,
 872 F.3d 567 (8th Cir. 2017) ...............................................................................24

*Summers v. Summers*,
 118 So. 912 (Ala. 1928) ...............................................................................17, 18

*Thompson v. Allstate Ins. Co.*,
 No. CV-87-0347-M (N.D. Ala. July 14, 1987) ..............................................11, 15

*Tinker v. Cont'l Ins. Co.*,
 410 A.2d 550 (Me. 1980) ...............................................................................9, 28

*Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*,
 817 So. 2d 687 (Ala. 2001) .........................................................................7, 8, 12

*Univ. Fed. Credit Union v. Grayson*,
 878 So. 2d 280 (Ala. 2003) ...............................................................................29

*Ware v. Metro. Prop. & Cas. Ins. Co.*,
 220 F. Supp. 3d 1288 (M.D. Ala. 2016) .............................................2, 8, 9, 21, 22

*Wilcox v. State Farm Fire & Cas. Co.*,
 874 S.W.2d 780 (Minn. 2016) .............................................................................24

*Wilton v. Seven Falls Co.*,
 515 U.S. 277 (1995) ....................................................................................25, 26

## STATUTES

Ala. Code §6-6-310 .................................................................................................18

Ala. Code §§27-12-1 et seq. .....................................................................................15

Ala. Code §27-14-11(a)(6) ........................................................................................15

## RULES

Ala. Admin. Code ch. 482-1-125 ...............................................................................18

Ala. Admin. Code r. 482-1-125-.01 ............................................................................15

Ala. Admin. Code r. 482-1-125-.09(2) ........................................14, 15, 16, 18, 20, 24

FED. R. CIV. P. 8(a)(2) ...............................................................................................7

FED. R. CIV. P. 12(b) .................................................................................................4

FED. R. CIV. P. 12(b)(6) ................................................................................................7

FED. R. CIV. P. 23(d)(1)(D) ....................................................................................27, 30

**OTHER AUTHORITIES**

43 Am. Jur. 2d *Insurance* § 299 (2013) ..................................................................9, 28

Kenneth S. Abraham, *Plain Meaning, Extrinsic Evidence, and Ambiguity:*
    *Myth and Reality in Insurance Policy Interpretation*, 25 CONN. INS. L.J.
    329 (Spring 2019) ...............................................................................................27

*Merriam-Webster's Collegiate Dictionary* 13 (11th ed. 2003) ..............................18, 20

Defendants Allstate Vehicle and Property Insurance Company ("Allstate Vehicle"), Allstate Insurance Company ("Allstate Insurance"), and Esurance Insurance Company ("Esurance"; collectively with Allstate Vehicle and Allstate Insurance, "Defendants") move the Court to dismiss with prejudice in its entirety and to strike the class allegations from the putative Class Action Complaint filed by Plaintiffs Lula Mitchell, Larry Johnson, Joyce Johnson, Thelma Petty-Cosey, Sarah Roberson, Maurice Williams, and Telecia Hardy, individually and on behalf of others similarly situated ("Plaintiffs"), and in support thereof show as follows:

## I.    SUMMARY OF THE ARGUMENTS

Plaintiffs' theory that Defendants breached their policies by depreciating labor—which Plaintiffs state means "intangible non-materials" in their complaint—when calculating the actual cash value ("ACV") of damaged insured property is based on the false argument that a reasonable insured could conclude that they are entitled to receive estimated labor costs for repairing property before the insured has incurred that cost. This conflicts with the policy language, the governing Alabama regulation, Alabama case law including *Hilley v. Allstate Ins. Co.*, 562 So. 2d 184, 190 (Ala. 1990), and *Huggins v. Hanover Ins. Co.*, 423 So.2d 147, 150 (Ala. 1982), and the ordinary dictionary meaning of the terms actual cash value and depreciation. Likewise, statements by the Alabama Supreme Court, including in *Baldwin Mut. Ins. Co. v. McCain*, 260 So. 3d 801, 803–04 (Ala. 2018), implicitly recognize the propriety of depreciating labor costs. Under no basis could Plaintiffs' foundational premise—that a reasonable insured would believe that, under the policy terms, he or she should be paid for labor expenses that he or she has not expended—succeed. As a result, Plaintiffs' claims fail as a matter of law and should be dismissed.

1

Plaintiffs have contracted with Defendants in their replacement cost insurance policies to receive the actual cash value of their insured property when it is damaged or destroyed. If Plaintiffs then repair or replace the damaged or destroyed insured property, they receive reimbursement for the costs they expended in making the repairs or replacements, less the amount of the actual cash value payment that they already received ("RCV"). Plaintiffs' entire suit is grounded on the erroneous claim that, when Defendants calculate the amount of the actual cash value for a piece of insured property by taking the replacement cost of the property and deducting depreciation, Defendants may only depreciate the material costs, and may not depreciate the labor costs that compose a portion of the value of the property.  Plaintiffs import a groundless "physical" distinction (distinguishing depreciation of material versus labor) that a reasonable insured would not reasonably conclude was required or correct based on the policy language and regulation. Alabama state and federal court decisions also confirm that the ACV and RCV provisions in the policies here are unambiguous and enforceable.

Further, the governing Alabama regulation requires calculation of actual cash value by "replacement cost of property minus depreciation" with no distinction between the type of "replacement cost" to which to apply depreciation. Under Alabama law (and as established below), the regulation is read into the insurance contract.

Dismissal is also proper under the three Alabama lower federal district court decisions that have considered depreciation of labor costs. *Ware v. Metro. Prop. & Cas. Ins. Co.*, 220 F. Supp. 3d 1288, 1290 (M.D. Ala. 2016) supports granting this Motion, based on its analogous RCV policy and its recognition that the policy language—that does not specifically refer to labor depreciation—clearly allowed deduction for depreciation from the entire estimated cost of the property. *Arnold v. State Farm Fire & Cas. Co.,* 268 F. Supp. 3d 1297, 1304–12 (S.D. Ala.

2017), and *Brasher v. Allstate Indem. Co.*, No. 4:18-cv-00576-ACA, 2018 WL 5629918, at *2–4 (N.D. Ala. 2018), which decided that the applicable policy and Alabama law did not authorize labor cost depreciation, are not dispositive or applicable here for numerous reasons. *Arnold* involved a previous version of the Alabama regulation which did not mandate measuring ACV as "replacement cost of property minus depreciation" and distinguishable policy language that did not mention depreciation. Unlike in *Arnold*, Defendants in this case demonstrate that the regulation is incorporated into the terms of the policy. Likewise, *Brasher* relied solely on *Arnold*, involved an ACV policy (not an RCV policy as in this case), and incorrectly looked to a legal source (*Black's Dictionary*) to define "depreciation" instead of a source providing a non-legal and everyday meaning, as required by Alabama law. Further, Alabama and other courts have recognized that depreciation properly applies to the full cost of repair or replacement when using the replacement cost minus depreciation calculation to determine ACV.

Plaintiffs' declaratory judgment action also fails as a matter of law because Plaintiffs' have failed to allege a viable substantive underlying claim and their sought declaratory relief is duplicative of their breach of contract claim.

Further, should the Court conclude that the Policy terms are ambiguous (which Defendants contest), then the Court should strike Plaintiffs' class allegations because, based on Plaintiffs' complaint, the requirements of a class action cannot be met as Alabama law provides that extrinsic evidence is admissible for each claim, which defeats predominance. Likewise, Plaintiffs' assertion that they may alternatively seek "issues classes" under Rule 23(c)(4) fails as a groundless attempt to end run around the Rule 23(b)(3) predominance requirement.

For all of these reasons, the Court should dismiss Plaintiffs' claims of breach of contract and declaratory relief and dismiss this case. Further, (1) if the Court concludes that the Policy is

ambiguous, it should strike Plaintiffs' class allegations and (2) the Court should strike Plaintiff's "issues classes" allegations.

## II.    FACTUAL BACKGROUND

Each of the Plaintiffs in this putative class action purchased a replacement cost homeowners insurance policy from one of the Defendants.1 Plaintiff Lula Mitchell purchased an Allstate Vehicle and Property Insurance Company Renewal House & Home Policy, Policy No. 815 666 027.2 Compl. ¶¶19; Ex. A. Plaintiffs Larry Johnson and Joyce Johnson likewise purchased an Allstate Vehicle and Property Insurance Company Renewal House & Home Policy, Policy No. 810 526 480. Compl. ¶25, Ex. B. Plaintiff Thelma Petty-Cosey purchased an Allstate Insurance Company Renewal Deluxe Homeowners Policy, Policy No. 010 512 188. Compl. ¶33; Ex. C. Plaintiff Sarah Roberson purchased an Esurance Personal Homeowners Policy, Policy No. HPAL010375811.  Compl. ¶40; Ex. D (as effective April 1, 2016 to April 1, 2017). Plaintiff Maurice Williams purchased an Allstate Vehicle and Property Insurance Company Renewal House & Home Policy, Policy No. 810 035 624. Compl. ¶47; Ex. E. Plaintiff Telecia Hardy

---

[1] Defendants' 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of Plaintiffs' complaint. As such, this Court is tasked with assessing the legal feasibility of Plaintiffs' pleadings. *See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 158 (2nd Cir. 2003). Reference to Plaintiffs' pleadings is relevant solely to Defendants' legal challenge to Plaintiffs' allegations and is not a proffer of extrinsic evidence.

[2] A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) accepts all facts as well-pleaded, but it does not admit legal conclusions or the truth or accuracy of opinions stated in pleadings. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974); *see* FED. R. CIV. P. 12(b).  Accordingly, the factual background in this section recites the allegations in the complaint. Defendants do not admit these allegations, but merely summarize the facts as alleged solely for purposes of this Motion. Additionally, Plaintiffs quote the policies, which are central to Plaintiffs' claims and the authenticity of the policies is not disputed. Accordingly, the Court may consider the policies without converting this motion to dismiss into a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

4

purchased an Allstate Vehicle and Property Insurance Company Renewal House & Home Policy, Policy No. 810 271 747. Compl. ¶53; Ex. F.

The Allstate Vehicle and Property Insurance Company policies purchased by Mitchell, the Johnsons, Williams, and Hardy, the Allstate Insurance Company policy purchased by Petty-Cosey, and the Esurance policy purchased by Roberson each contained the same policy language as to "How [the Defendants] Pay for a Loss." Ex. A at 14. *See* Compl. ¶95 (stating that "the insurance policies at issue . . . are essentially identical in all respects material in this litigation"). As a result, this Motion refers to the policies collectively as the "Policy." The Policy provides:

**How We Pay for a Loss**

[P]ayment for covered loss will be by one or more of the following methods:

. . . .

b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the Limit Of Liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c) . . . below if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement. . . . **[W]e** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. . . .

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1) the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises**;
2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises**; or

    3)  the Limit Of Liability applicable to the **building structure(s)** as shown on the Policy Declarations[.] . . .

. . . .

Building Structure Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to the **building structures** and the smallest of 1), 2), or 3) above.

App. 43–44 (Ex. A); 99–100 (Ex. B); 129–30, 148–49 (Ex. C) (slight bolded text and capitalization differences); 203–04 (Ex. D) (slight bolded text and punctuation differences); 245–48 (Ex. E) (differences in section labels and omitted text)[3]; 335–36 (Ex. F).

Each Plaintiff alleges that he or she submitted a claim to Defendants for property damage and Defendants determined that each of their claims were covered by their respective Policy. Compl. ¶¶21–23, 27–29, 35–37, 42–44, 49–51, 55–57. Plaintiffs allege that Defendants employed a "'replacement cost minus depreciation' methodology to calculate each respective loss and to make their respective ACV payments." Compl. ¶59. Plaintiffs claim that Defendants breached the Policy by "wrongfully with[holding] amounts" due "on their ACV claims" by withholding "costs for both the materials and labor required to repair or replace buildings and structures as depreciation."[4] Compl. ¶¶63–64, 67, 74, 97. Plaintiffs do not claim that they did not receive the full replacement cost reimbursement that they were due under the Policy if they

---

[3] A policy endorsement for Plaintiff Williams includes the following (which is similar in substance to the other policies): "Building Structure Reimbursement will not exceed the smallest of the following amounts: 1) the replacement cost of the part(s) of the **building structure(s)** for readily available construction materials or methods that are functionally equivalent to and less costly than obsolete, antique or custom construction materials or methods for the same use on the same premises; 2) the amount actually and necessarily spent to repair or replace the damage **building structure(s)** and readily available construction materials or methods are functionally equivalent to and less costly than obsolete, antique or custom construction materials or methods for the same use on the same premises; or 3) the Limit Of Liability applicable to the **building structure(s)** as shown on the Policy Declarations[.]" App. 246 (Ex. E).
[4] Plaintiffs state that, in their complaint, "'labor' means intangible non-materials." Compl. ¶66.

repaired or replaced the damaged property. *See* Compl. They assert claims of breach of contract and declaratory relief. Compl. ¶¶92-107.

## III.    ARGUMENTS AND AUTHORITIES

### A.    Standard for Rule 12(b)(6) dismissal and Alabama law of insurance contract construction.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6); *see* FED. R. CIV. P. 8(a)(2). "To survive motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Isbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If the plaintiffs' claims are not "plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. In order to satisfy the plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although a court must assume the truth of well-pled factual allegations for purposes of Rule 12(b)(6), this assumption does not apply to legal conclusions. *Ashcroft*, 556 U.S. 662, 678–79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, does not suffice." *Id.* at 679. Where it appears beyond doubt that under no set of facts would the plaintiff's allegations entitled him to relief, dismissal is appropriate. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

"A contract of insurance, like other cont[r]acts, is governed by the general rules of contracts." *Jay v. United Servs. Auto. Ass'n*, No. 1190941, 2021 WL 2492739, at *2 (Ala. June 18, 2021) (quoting *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001)). "Insurance companies are entitled to have their policy contract enforced as written." *Id.*

(quoting *Twin City*, 817 So. 2d at 691). "Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Id.* (quoting *Twin City*, 817 So. 2d at 691).

"If an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction." *Id.* (quoting *Twin City*, 817 So. 2d at 692). "The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous." *Id.* (quoting *Twin City*, 817 So. 2d at 692). "While ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted reasoning." *Id.* (quoting *Twin City*, 817 So. 2d at 692). Further, "the mere fact that a word or phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). "If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." *Id.* In determining whether a term is ambiguous, the Court "must determine 'what a reasonably prudent person applying for insurance would have understood [the term] to mean.'" *Ware*, 220 F. Supp. 3d at 1290 (quoting *Herrera*, 912 So. 2d at 1144); *see Harleysville Mut. Ins. Co. v. Dapper, LLC*, No. 2:09-cv-794-TFM, 2010 WL 2925779, at *5 (M.D. Ala. July 21, 2010) ("A term in a contract is ambiguous only if, when given the context, the term can reasonably be open to different interpretations by people of ordinary intelligence." (quoting *Lamberts v. Coregis Ins. Co.*, 950 So. 2d 1156, 1161 (Ala. 2006)).

Further, "the rule that ambiguous contracts are to be construed in favor of insureds . . .

may [not] be permitted to frustrate the parties' expressed intention if such intention can be otherwise ascertained." *Baldwin Mut. Ins. Co. v. Adair*, 181 So. 3d 1033, 1042 (Ala. 2014) (quoting 43 Am. Jur. 2d *Insurance* § 299 (2013) and citing *Tinker v. Cont'l Ins. Co.*, 410 A.2d 550, 554–54 (Me. 1980) (discussing use of "extrinsic evidence in the construction of an insurance agreement").

**B.     Plaintiffs' breach of contract claim fails as a matter of law because the Policy, the governing Alabama regulation, and dictionary definitions all support that a reasonable insured would reasonably construe calculating ACV under the Policy to include depreciation on the value of the damaged property as a whole, including labor costs, which constituted a portion of the property's value.**

**1.     A textual analysis of the Policy demonstrates that reasonable insured would reasonably construe the Policy to provide for depreciation of labor costs.**

Plaintiffs claim that Defendants breached the Policy by "unlawfully withholding" "labor as depreciation from ACV payments[.]" Compl. ¶¶95, 97. A textual analysis of the Policy establishes that, "constru[ing] [the] language according to the meaning that a person of ordinary intelligence would reasonably give it[,]" Defendants' depreciation of labor costs is not a "breach" of its "contractual duties" as Plaintiffs allege. Compl. ¶97. *Jay*, 2021 WL 2492739, at *2. *Cf. Arnold*, 268 F. Supp. 3d at 1310 (faulting defendant for not "offer[ing]" "textual analysis of the Policy" to demonstrate labor depreciation from ACV was not breach of policy). *See also Ware v. Metro. Prop. & Cas. Ins. Co.*, 220 F. Supp. 3d 1288, 1290–91 (M.D. Ala. 2016) (focusing on court's "analysis" of "the text of the policy").

Each of the Plaintiffs' policies is a "Replacement Cost policy." App. 43–44 (Ex. A); 99–100 (Ex. B); 129–30, 148–49 (Ex. C); 203–04 (Ex. D); 245–48 (Ex. E); 335–36 (Ex. F). These policies each "limit[] all replacement cost recovery . . . to actual cash value until repair or replacement is complete." *Hilley*, 562 So. 2d at 190.

- **Calculation of ACV under the Policy is defined to include and provides for deduction**

**for depreciation:** The policies at issue all provide, under a section entitled "Actual Cash Value[,]" "If **you** [the insured] do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation." App. 43 (Ex. A); 99 (Ex. B); 148 (Ex. C); 203 (Ex. D); 245 (Ex. E); 335 (Ex. F). Thus, the Policy specifically provides for "deduction for depreciation" in calculating the ACV amount that an insured receives.

- **Calculation of subsequent reimbursement of replacement cost under the Policy if complete repairs or replacement of property does not provide for deduction for depreciation:** The Policy likewise provides that Defendants "will make additional payment to reimburse **you** [the insured] for cost in excess of actual cash value if **you** repair, rebuild, or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment." App. 44 (Ex. A); 100 (Ex. B); 130, 149 (Ex. C); 203 (Ex. D); 246 (Ex. E); 336 (Ex. F). The Policy states that the replacement cost value ("RCV") payment shall not exceed the smallest of either "the replacement cost of the part(s) of the **building structure**(s)[,]" "the amount actually and necessarily spent to repair or replace the damaged building[,]" or "the limit of liability applicable to the **building structure(s)** as shown in the Policy." App. 44 (Ex. A); 100 (Ex. B); 149 (Ex. C); 204 (Ex. D); 246 (Ex. E); 336 (Ex. F). Significantly, unlike the ACV section, the replacement cost provision does not provide for a deduction for depreciation—so that a reasonable insured would reasonably construe the Policy as providing for a deduction for depreciation to the ACV payment but no depreciation deduction to the RCV payment. *Jay*, 2021 WL 2492739, at *2.

Four significant points follow from the clear wording of these provisions according to their reasonable construction by a reasonable insured. *Id.*

a. **No reasonable insured would reasonably construe the Policy to provide that the insured was entitled to be paid for labor costs that the insured has not incurred.**

First, under these replacement cost policies, the insured is not entitled to recover the insured's replacement cost until she has spent the money to accomplish the needed repairs or replacement. *See Huggins*, 423 So.2d at 150 ("provisions like . . . those have been interpreted as providing a condition precedent to an insurer's duty to pay repair or replacement costs of an insured building. A party who has not repaired or replaced his insured building has not complied with the condition precedent to recovery under the policy and so cannot recover."). Nowhere have Plaintiffs alleged that they have not received the full replacement cost for the insured property after repair or replacement under the RCV provisions of the Policy. *See* Compl. (containing no allegation that did not receive full replacement cost after repair or replacement); *see also id.* at ¶80 (recognizing "[c]ertain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies").

Under the provisions of the Policy, no reasonable insured would reasonably construe the Policy to provide that the insured would receive payment for the value of labor that the insured did not pay for and incur. *See Hilley*, 562 So. 2d at 190 (citing and quoting *Thompson v. Allstate Ins. Co.*, No. CV-87-0347-M (N.D. Ala. July 14, 1987) ("'Allstate has no duty to advance the proceeds' to fulfill the replacement precondition")). Plaintiffs' theory that they should receive the value of labor costs that they have not incurred is in direct contradiction to *Hilley* and *Huggins*. Instead, the express terms of the Policy allow the insured (*after incurring costs in repairing or replacing the damaged property*) to recover "the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for

11

similar use on the same **residence premises**[.]" App. 44 (Ex. A); 100 (Ex. B); 149 (Ex. C); 204 (Ex. D); 246 (Ex. E); 336 (Ex. F).

Moreover, the Policy provides that, before incurring costs for repair or replacement, the insured is solely entitled to "payment" for the "damaged, destroyed or stolen property" "on an actual cash value basis." App. 43 (Ex. A); 99 (Ex. B); 148 (Ex. C); 203 (Ex. D); 245 (Ex. E); 335 (Ex. F). No reasonable insured could reasonably construe the Policy contrary to the express Policy language. Moreover, attempts by Plaintiffs to reach outside of the terms of the Policy to create an "ambiguous" interpretation that conflicts with terms of the Policy contravenes Alabama law of contract interpretation. *Jay*, 2021 WL 2492739, at *2 (quoting *Twin City*, 817 So. 2d at 691). In addition, as noted by the Middle District of Alabama in *Harris*, because of the "risk-shifting benefit" of an insurance relationship, insurers may utilize a variety of tools to combat "moral hazards" including "limiting payout to fair market value." *Harris v. ACCC Ins. Co.*, No. 2:16-cv-636-TFM, 2017 WL 4322405, at *4 (M.D. Ala. Sept. 28, 2017) (citing *Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335, 1344–45 (M.D. Ala. 2012), *aff'd* 519 Fed. App'x 656 (11th Cir. May 20, 2013)).

      **b.**     **Plaintiffs erroneously import a purported "physical" distinction to the ACV measurement that the Policy language nowhere mentions and does not reasonably support when read by a reasonable insured.**

Second, Plaintiffs' reading erroneously appends a supposed "physical" element on the ACV measurement that the unambiguous Policy provisions do not refer to or support. The unambiguous Policy language with respect to ACV "payment" and RCV "reimbursement" consider the value of the property or the replacement cost of the property as a whole—not based on certain components of the property or an estimate to repair the property (such as the value or cost of the materials versus the value or cost of the labor to create the final product). Plaintiffs

are unable to point to any Policy provision—because there is none—that considers the "labor" versus the "material" components of the value of the insured damaged property. As a result, based on the unambiguous terms of the Policy, a reasonable insured would reasonably construe the "depreciation" that applies to the calculation of ACV as pertaining to the entire value of the "damaged, destroyed or stolen property" which, of necessity would include the labor and materials. *See Jay*, 2021 WL 2492739, at *2; *see also Butler v. Travelers Home & Marine Ins. Co.*, 858 S.W.2d 407, 411 (S.C. 2021) ("the fact the labor cost is embedded makes it impractical, if not impossible, to include depreciation for materials and not for labor to determine ACV of the damaged property"); *Accardi v. Hartford Underwriter Ins. Co.*, 838 S.E.2d 454, 457 (N.C. 2020) (because "[t]he value of a house is determined by considering it as a fully assembled whole, not as the simple sum of its material components[,]" "[t]he policy language provides no justification for differentiating between labor and materials when calculating depreciation, and to do so makes little sense").

> ### c. The Alabama Supreme Court has implicitly endorsed labor depreciation of replacement costs.

The Supreme Court of Alabama in *McCain*, 260 So. 3d at 803–04, implicitly recognizes the propriety of "deduct[ing] some amount for depreciation . . . of the damaged materials and the labor costs of initially installing those damaged materials (based on their condition prior to the covered damage and their expected life span" versus the impropriety of deducting "labor costs associated with the removal of the damaged materials." *Id.* (quoting *Baldwin Mut. Ins. Co. v. McCain*, 176 So. 3d 1195, 1195–96 (Ala. 2015) and determining correctness of class certification). *McCain* cites *Branch v. Farmers Ins. Co.*, 55 P.3d 1023, 1028 (Okla. 2002), which concluded (in answering a certified question from the Tenth Circuit): "Replacement costs include the cost of the labor to install the new materials forming the new roof . . . but labor costs to tear

13

off an old roof are not included as a necessary part of the replacement costs of installing a new roof." *See id.* ("A roof is the product of materials and labor, and the roof's age and condition are also relevant facts in setting the amount of a loss."). *Branch* stated, "since labor to install a new roof was a cost the insured was reasonably likely to incur in replacing his roof, the cost of labor was included within the meaning of 'replacement cost.'" *Branch*, 55 P.3d at 1027. "Because labor was included within that definition, it was proper to depreciate both materials and labor when calculating the loss suffered by the insured." *Id.*

The Policy terms in this case reflect and support this distinction between "replacement cost of the property" and "costs of removal": the Policy calculates payment for the covered loss on an "actual cash value basis," which—under the Policy and under Alabama Administrative Code rule 482-1-125-.09(2)—is measured by the "replacement cost of property minus depreciation." *See* App. 43 (Ex. A); 99 (Ex. B); 148 (Ex. C); 203 (Ex. D); 245 (Ex. E); 335 (Ex. F). Ala. Admin. Code r. 482-1-125-.09(2). "Debris Removal" coverage falls under a distinct section of the Policy, providing for payment for "reasonable expenses **you** incur to remove debris of covered property damaged by a loss[.]" *See* App. 41 (Ex. A); 97 (Ex. B); 146 (Ex. C); 200 (Ex. D); 245 (Ex. E); 333 (Ex. F). As in *Branch*, as cited with approval by the Alabama Supreme Court in *McCain*, "labor to install" replacement property would be incurred in replacing the damaged property, and thus is part of "replacement cost"—and, as a result, "it was proper" for Defendants "to depreciate both materials and labor when calculating the loss" that Plaintiffs suffered. *Branch*, 55 P.3d at 1027; *see Baldwin Mut. Ins. Co. v. McCain*, 260 So. 3d at 804.

      d.    **Alabama law and Alabama federal court decisions confirm that the ACV and RCV provisions in the Policy are unambiguous, valid, and enforceable.**

The Supreme Court of Alabama "and Alabama federal district courts applying Alabama law have explicitly held that replacement cost provisions similar or identical to those provisions at issue here are valid and enforceable." *Hilley*, 562 So. 2d at 189 (citing *Huggins*, 423 So. 2d at 149; *Blevins v. State Farm Fire & Cas. Co.*, No. CV-86-DT-0114-M (N.D. Ala. Aug. 22, 1982); *Cherokee Farms, Inc. v. Fireman's Fund Ins. Co.*, 526 So. 2d 871 (Ala. 1988)). Further, as the Supreme Court of Alabama recognized in *Hilley*, 562 So. 2d at 189, "the Allstate replacement cost/actual cash value provisions at issue here were held to be clear, unambiguous, and valid in *Thompson v. Allstate Ins. Co.*, No. CV-87-0347-M (N.D. Ala. July 14, 1987)."

2.  **The governing Alabama regulation requires ACV to be calculated as "replacement cost of property minus depreciation" with no distinction between the type of "replacement cost of property" to which "depreciation" applies.**

Alabama Administrative Code rule 482-1-125-.09(2) provides in relevant part:

> When the insurance policy provides for the adjustment and settlement of losses on an actual cash value basis on residential fire and extended coverage, the insurer shall determine actual cash value as replacement cost of property at time of loss less depreciation.

Ala. Admin. Code r. 482-1-125-.09(2); *see* Ala. Admin. Code r. 482-1-125-.01(chapter—including rule 482-1-125-.09—"adopted under the authority of Insurance Trade Practice Act" (Ala. Code §§27-12-1 et seq.) and other statutory provisions including Ala. Code §27-14-11(a)(6) (requiring policies to state "[t]he conditions pertaining to the insurance")).

The clear wording of the regulation to a reasonable insured communicates that: (1) the measurement of ACV is replacement cost of the property *minus depreciation* and (2) depreciation applies to the "replacement cost" without distinction as to the components of the replacement cost. Based on the regulation and Policy, Plaintiffs are entitled to the actual cash value of their property before repair, which is the market value before the loss. *See Lowery v.*

*Fid. Nat'l Prop. & Cas. Ins. Co.*, 805 F.3d 204, 210 (5th Cir. 2015). Courts have recognized that replacement cost minus depreciation is an appropriate methodology for determining market value. *Id.* (noting minimal difference between "fair market value of a residential property" and "its replacement cost minus depreciation"). Alabama Administrative Code rule 482-1-125-.09(2) effectuates this replacement cost minus depreciation approach to determining actual cash value in Alabama.

Three significant points flow from this regulation and the case law applying it. First, the conclusion in *Arnold* that the regulation "does not dictate that the defendant apply depreciation" or that the subject policy "unambiguously provide[s] for labor depreciation" is inapplicable in this case because it pertained to a previous version of the regulation that provided "three listed methods for calculating ACV[.]" *Arnold*, 268 F. Supp. 2d at 1305. The applicable regulation provides only *one way* to calculate ACV: "replacement cost of property at time of loss less depreciation"—with no indication that depreciation would apply to anything other than the entire "replacement cost of property at time of loss." Ala. Admin. Code r. 482-1-125-.09(2).

In addition, the conclusion in *Arnold* that the insurer "failed to show" that the insured "was charged with knowledge of the regulation so as to render unreasonable any other understanding of the term" is inapplicable. *Arnold*, 268 F. Supp. 2d at 1305–06. First, the *Arnold* conclusion that the insurer did not establish that the regulation "provide[s] controlling definitions missing from a policy" is inapposite. *Id.* at 1305. Unlike the Policy in this case, the policy in *Arnold* did not define ACV to incorporate depreciation. *Id.* at 1305.

Even if this Court concludes that the Policy does not "define" ACV, unlike the insurer in *Arnold*, Defendants "demonstrate[]" here that Plaintiffs were "charged with knowledge of the regulation to render unreasonable any other understanding of the term." *Id.* at 1305–06. The

*Arnold* court "rule[d] that the defendant" had "failed to show" that regulations can "provide controlling definitions missing from a policy to the detriment of the insured[.]"   *Id.* at 1306. Allstate makes that showing in this motion.   "Without question, contracts of insurance must be construed in light of existing law." *Ex parte State Farm Fire & Cas. Co.*, 523 So. 2d 119, 120 (Ala. 1988). "Indeed, statutory provisions respecting insurance are to be read into all insurance contracts subject to Alabama law[.]" *Id.*

Alabama law provides that existing Alabama law is read into an insurance policy, including when it is applied against the insured.   *Ex parte State Farm* held that an Alabama statute voiding a policy if an insured misrepresents to an insurer the proof of insured's loss "must be read into the automobile policy in question" even though its application was to the insured's detriment. *Id.*; *see Cook v. Trinity Univ. Ins. Co. of Kansas*, No. 7:06-CV-02029-LSC, 2007 WL 9717431, at *10 (N.D. Ala. Dec. 13, 2007) (in ruling that insureds were "precluded from recovering under the policy" because of intentional misrepresentations, stating "[s]tatutory provisions regarding insurance are to be read into all insurance contracts subject to Alabama law" and holding statute regarding effect of misrepresentations in proof of loss "must be read into the insurance policy"); *see also Omni Ins. Co. v. Foreman*, 802 So. 2d 195, 197–98 (Ala. 2001) ("We read the governing statutory law into the insurance policy[,]" citing *Higgins v. Nationwide Mut. Ins. Co.*, 282 So.2d 301, 303 (Ala. 1973)); *Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C.*, 580 So. 2d 1326, 1328 (Ala. 1991) ("Every contract is made with reference to existing law and every law affecting the contract is read into and becomes a part of the contract when it is made," and, consequently, employee/insured subject to common law concerning employer's entitlement to return of insurance premiums); *Summers v. Summers*, 118

So. 912, 915 (Ala. 1928) (life insurance "policy" "procured" "with the presumed knowledge" of law prohibiting insured to vest right in beneficiary through contract).

Moreover, the facts and holding in *Herrera* cited in *Arnold* concerning a "statutory definition" is inapplicable. 912 So. 2d at 1143–44; *see Arnold*, 268 F. Supp. 3d at 1306 (faulting insurer for "fail[ing] to effectively address *Herrera*['s]" conclusion concerning "inapposite" statutory term). The insured in *Herrera* sought to establish that the term "forcible entry" in his automobile insurance policy was ambiguous based in part on Alabama Code §6-6-310 "defin[ing] 'forcible entry' on real estate[.]" *Herrera*, 912 So. 2d at 1143–44; *see* Alabama Code §6-6-310 (concerning "forcible entry and unlawful detainer" on real estate). The Alabama Supreme Court held that "the statutory definition at § 6-6-310" which concerned forcible entry on real estate was "inapposite in determining whether the phrase 'forcible entry' in an automobile insurance policy is ambiguous." *Herrera*, 912 So. 2d at 1144. In contrast, rule 482-1-125-.09(2) is directly on-point in this case, providing for determination of ACV as "replacement cost minus depreciation" as a "standard' for "property/casualty insurance" "policies with replacement costs." Ala. Admin. Code r. 482-1-125-.09(2); Ala. Admin. Code ch. 482-1-125.

### 3. The ordinary dictionary meaning of ACV and depreciation likewise supports the propriety of depreciating labor costs under the Policy.

When interpreting Policy terms, the terms "actual cash value" and "depreciation" "should be given" their "ordinary meaning." *Herrera*, 912 So. 2d at 1144 (garnering "ordinary meaning" of "forcible" as used in insurance policy from *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003)). *Merriam-Webster's Collegiate Dictionary* 13 (11th ed. 2003)—the same dictionary used by the Alabama Supreme Court in *Herrera* to determine the "ordinary meaning" of the term at issue—defines "actual cash value" as "money equal to the cost of replacing lost, stolen, or damaged property after depreciation[.]" The *Merriam-Webster's Collegiate Dictionary* also

18

defines "depreciate" as "to lower the price or estimated value of <~property>[.]" *Id.* at 335. This unambiguous "ordinary meaning" of depreciation does not differentiate or even suggest that depreciation only applies to the "materials" versus the "labor" components of the "price or estimated value of [property]" but instead dictates that depreciation applies to the "price or estimated value of [property]" without further qualification. *Id.* at 13, 335; *see Lowery*, 805 F.3d at 210 (in context of determining actual cash value, "[i]n a well-functioning market, any difference between the fair market value of a residential property and its replacement cost minus depreciation should be minimal[,]" citing *McAnerney v. Newark Fire Ins. Co.*, 156 N.E. 902, 903–04 (N.Y. 1928) as "recognizing that '[v]alue ascertained by market price is necessarily expressive of a suitable deduction for depreciation'").

The unambiguous terms of the Policy, the applicable regulation that forms part of the Policy terms, and the ordinary meaning garnered from dictionary definitions all establish that Plaintiffs' claim that Allstate breached the Policy by depreciating labor fails as a matter of law.

### 4. The motion to dismiss holdings in Arnold and Brasher are not applicable to this case and the dismissal in Ware supports a similar outcome here.

The denials of insurers' motions to dismiss in the labor depreciation cases *Arnold*, 268 F. Supp. 3d at 1304–12, and *Brasher*, 2018 WL 5629918, at *2–4, do nothing to disprove that Plaintiffs have failed to state a breach of contract claim in this case. *Arnold*'s holding is inapplicable here because (1) the Policy in this case differs from the policy in *Arnold* for, while the *Arnold* policy did not define ACV or mention depreciation, the Policy in this case defines ACV to include depreciation—or, if the Court concludes that the Policy does not define ACV, the Policy clearly states that calculating ACV involves depreciation. *See Arnold*, 268 F. Supp. 3d at 1304. App. 43 (Ex. A); 99 (Ex. B); 148 (Ex. C); 203 (Ex. D); 245 (Ex. E); 335 (Ex. F). (2) A previous version of Administrative Code rule 482-1-125.09(2) applied in *Arnold*, which "g[a]ve

the insurer multiple options" "for calculating ACV"—unlike the present regulation that applies

in this case, which dictates that ACV shall be determined by replacement cost of property minus

depreciation. *Arnold*, 268 F. Supp. 3d at 1305; *see* Ala. Admin. Code r. 482-1-125.09(2). (3)

Defendants have demonstrated what the court held the insurer in *Arnold* did not: that Alabama

Administrative Code rule 482-1-125.09(2) is incorporated into the terms of the Policy, and

"provides controlling definitions" in the event that the Court rules they are "missing from a

policy to the detriment of the insured[;]" and *Herrera* does not limit the regulation's application.

*Arnold*, 268 F. Supp. 3d at 1305–06. Instead *Herrera* supports applying yet another ground

corroborating the unambiguous ordinary meaning of actual cash value and depreciation: the

definitions in *Websters New Collegiate Dictionary. See Arnold*, 1304–06; *see also* **Herrera**, 912

So. 2d at 1144. See Section B(3) above.

Likewise, the denial of the motion to dismiss in *Brasher*, 2018 WL 5629918, at *2–4,

does nothing to negate that Plaintiffs' breach of contract claim should be dismissed. *But see*

*Brasher*, No. 4:18-cv-00576-ACA, 2020 WL 4673259, at *1 (N.D. Ala. Aug. 12, 2020)

(ultimately denying class certification). The *Brasher* court solely relied upon *Arnold*'s reasoning

and holding that "State Farm did not demonstrate that the policy 'unambiguously provides for

depreciation of labor costs.'" *Id.* at *3. But, as established immediately above, *Arnold*'s holding

denying the motion to dismiss is inapplicable to this case based on policy language, distinctive

applicable regulation that Defendants have demonstrated is incorporated into the Policy, and the

ordinary meaning of actual cash value and depreciation as established by *Webster's Dictionary*.

*See* B(3) above. Moreover, the *Brasher* court (1) involved an ACV policy, which provided no

ultimate reimbursement for costs of repair or replacement (as the RCV policies do in this case);

and (2) employed *Black's Law Dictionary* to determine a definition of "depreciation"—a source

that the Supreme Court of Alabama specifically disapproves to determine a term's ordinary meaning, as required for contract construction. *See Herrera*, 912 So. 2d at 1144 ("courts in interpreting words should not define the words using technical or legal terms" citing *Liggans R.V. Ctr. v. John Deere Ins. Co.*, 575 So. 2d 567, 570 (Ala. 1991)).

In contrast, the Middle District of Alabama holding in *Ware*, 220 F. Supp. 3d at 1290–91, granting the insurer's motion to dismiss holding the policy unambiguously allowed for depreciation of the "entire cost of repair, including repair materials and labor" supports dismissal here on multiple bases. First, like the Policy in this case (along with the incorporated regulation), the policy in *Ware* defined actual cash value as meaning replacement cost less depreciation, specifically: "the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence." *Id.* at 1290. As in this case, the policy did not specifically refer to "labor depreciation," and yet the *Ware* court recognized that, under this definition, "it is clear that an allowance for depreciation is to be deducted from the entire estimated cost of repairing the covered property." *Id.* at 1291. Also, as with the Policy in this case and the associated regulation, "nothing in the [*Ware*] policy suggest[ed] that only the materials component of that cost of repair should be depreciated or that the repair labor cost should be ignored when determining depreciation." *Id.* As in this case, the *Ware* "policy clearly contemplate[d] that the depreciation relates to the depreciation of the total estimated cost to repair or replace the property." *Id.*

Moreover, as in this case, in *Ware*, "the insured may make an additional claim to recover that full depreciation if the insured actually makes the repairs or replaces the property." *Id.* Just like the Policy in this case, the "policy language" in *Ware* "allowing for the recovery of this depreciation likewise makes no distinction between labor and material repair costs." *Id.*

Therefore, "[t]he absence of this distinction for such claims supports the [*Ware*] Court's interpretation"—and Defendants' interpretation in this case—"of depreciation in the 'actual cash value' context." *Id.*

> **5.** **Courts in Alabama and in other jurisdictions have long-recognized that depreciation properly applies to the full cost of repair or replacement when employing the cost approach to measure ACV.**

In addition to the dispositive grounds established above, Alabama common law likewise supports that Defendants did not breach the policy by depreciating the full replacement cost in calculating ACV. The Supreme Court of Alabama has long held that "'[a]ctual cash value' means, and can only mean, what the thing is worth in money, allowing for depreciation." *Glens Falls Ins. Co. of N.Y. v. Garner*, 155 So. 533, 536 (Ala. 1934); *see Reliance Ins. Co. v. Substation Prod. Corp.*, 404 So. 2d 598, 609 (Ala. 1981) ("Actual cash value means what the property is worth in money, allowing for depreciation."); *see also Hilley*, 562 So. 2d at 190 (plaintiffs could not "overcome the clear and unambiguous terms of their Allstate policy that precluded any replacement cost payment prior to the completion of rebuilding"); *Huggins*, 423 So. 2d at 151 ("In a total loss, depreciation is deducted from replacement cost to determine actual cash value. Thus, actual cash value will nearly always be less than replacement costs").

Further, although *Arnold*, 268 F. Supp. 3d at 1305–06 (denying the insurer's motion to dismiss), stated that the Alabama Supreme Court in *Ballard v. Lee*, 671 So. 2d 1368, 1375 (Ala. 1995), "reject[ed] the proposition that the undefined term" "actual cash value" "unambiguously includes depreciation," the *Arnold* Court later clarified—in denying a motion for reconsideration "challenging the Court's treatment of *Ballard*." *Arnold v. State Farm Fire & Cas. Co.*, No. 17-0148-WS-C, 2017 WL 5451749, at *6–7 (S.D. Ala. Nov. 14, 2017). The *Arnold* Court stated that what it "said in discussing *Ballard* is that a person without specialized knowledge could

reasonably understand 'actual cash value' to mean something like 'fair market value' and could reasonably understand that depreciation is not deducted from fair market value." *Id.* at 7. Defendants agree: replacement cost of the property minus depreciation (the approach employed by Allstate and required by the Alabama regulation) is a means to determine the fair market value of damaged or destroyed property; in turn, "the ordinary meaning of fair market value does not contemplate subtracting depreciation from an established fair market value." *Id.*

In addition, since the nineteenth century, Alabama courts have recognized that when calculating ACV by employing the cost approach (replacement cost minus depreciation), depreciation properly applies to the full cost of repairing or replacing the damaged property. In *Commercial Fire Ins. Co. v. Allen*, 1 So. 202, 208 (Ala. 1886), the Supreme Court of Alabama stated that, "[i]f property had been destroyed which, from use or otherwise, had become less valuable than when new, then the cost of repairing it, less the percentage of depreciation of the destroyed article by such use, will determine the extent of the damages."

Likewise, numerous courts have concluded that plain policy language and common sense—just as in this case—dictate that depreciation applies to the whole cost of replacement or repair costs. *See Butler*, 858 S.W.2d at 411 ("the value of the damaged property is reasonably calculated as a unit" and "it makes no sense for an insurer to include depreciation for materials and not for embedded labor"); *Accardi v. Hartford Underwriter Ins. Co.*, 838 S.E.2d 454, 457 (N.C. 2020) ("no justification" and it "makes little sense" under policy language "for differentiating between labor and materials" when "calculating depreciation" because value determined for "fully assembled whole, not as the simple sum of is material components"); *Henn v. Am. Family Mut. Ins. Co.*, 894 N.W.2d 179, 189 (Neb. 2017) (explaining that "absent specific policy language in the policy, the insured does 'not pay for a hybrid policy of actual cash value

for roofing materials and replacement costs for labor'" and "[t]he property is a product of both materials and labor" (quoting *Redcorn v. State Farm Fire & Cas. Co.*, 555 P.3d 1017, 1021 (Okla. 2002)); *Wilcox v. State Farm Fire & Cas. Co.*, 874 S.W.2d 780, 784 (Minn. 2016) (concluding plaintiffs "do not advance a reasonable interpretation of the phrase 'actual cash value' that would categorically exclude embedded-labor-cost depreciation under every circumstance"); *In re State Farm Fire & Cas. Co.* ("*LaBrier*"), 872 F.3d 567, 574 (8th Cir. 2017) (depreciation has a "well understood meaning" and dictionary definitions regularly "deduct depreciation from the initial full cost of the damaged asset, because that was the insured's investment"); *Graves v. Am. Family Mut. Ins. Co.*, 686 Fed. App'x 536, 540 (10th Cir. 2017) ("Based on the plain and ordinary meaning of 'depreciation,' a reasonably prudent insured would not expect the insurer to apply such an unorthodox depreciation method" which "involves distinguishing materials from labor costs" when "determining actual cash value").

### 6. Plaintiffs' incorrectly define "labor" withheld as depreciation contrary to the Policy and Alabama law.

Plaintiffs' pled claims fail on yet additional bases. First, Plaintiffs' incorrect definition of "labor"—in the context of "withholding 'labor' as depreciation"—conflicts with the Policy and Alabama law because it includes "removal costs to remove damaged property[.]" Compl. ¶66. As established above, the Policy terms and Alabama regulation require measurement of "actual cash value" by "replacement cost of property minus depreciation." *See* App. 43 (Ex. A); 99 (Ex. B); 148 (Ex. C); 203 (Ex. D); 245 (Ex. E); 335 (Ex. F); Alabama Administrative Code r. 482-1-125-.09(2). Removal costs are covered expenses under an entirely separate provision of the Policy and are not "replacement costs." *See* App. 41 (Ex. A); 97 (Ex. B); 146 (Ex. C); 200 (Ex. D); 245 (Ex. E); 333 (Ex. F). *See McCain*, 260 So. 3d at 803–04 (citing *Branch*, 55 P. 3d at 1028

(replacement costs include "cost of labor to install the new materials" but not "labor costs to tear off an old roof")).

**C.      Plaintiffs' declaratory judgment action fails as a matter of law and should be dismissed because Plaintiffs have not asserted a viable cause of action and it is duplicative of Plaintiffs' breach of contract claim.**

**1.      Plaintiffs' failure to allege a viable cause of action requires dismissal of their declaratory judgment claim.**

Plaintiffs seek a declaration "that Defendant's [sic] property insurance contracts prohibit the withholding of labor costs as described herein adjusting losses under the methodology employed herein." Compl. ¶105. Plaintiffs' declaratory judgment action should be dismissed as "no actual controversy exists between the parties because"—as established above—Plaintiffs "fail[] to establish, as a matter of law," their "underlying substantive claim" of breach of contract. *Eagle Eye Outfitters, Inc. v. Cincinnati Cas. Co.*, No. 1:20-cv-335-ECM, 2021 WL 4443701, at *5 n.5 (M.D. Ala. Sept. 28, 2021); *see A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019) ("The Declaratory Judgment Act 'provides that a declaratory judgment may only be issued in the case of an actual controversy'" (citing 28 U.S.C. §2201)). As a result, Plaintiffs are "not entitled to declaratory relief." *Eagle Eye*, 2021 WL 4443701, at *5 n.5.

**2.      The sought declaratory relief is duplicative.**

In addition, "[i]t is well established that district courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory." *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–88 (1995)). "[I]n deciding whether to issue a declaratory judgment, courts must 'yield[] to considerations of practicality and wise judicial administration.'" *Loper v. Lifeguard Ambulance Serv., LLC*, No. 2:19-CV-583-CLM, 2021 WL

4458873, at \*18 (N.D. Ala. Sept. 29, 2021) (quoting *Wilton*, 515 U.S. at 288). "[D]eclaratory judgments are improper where the issue falls within the scope of another claim in the case." *Id.* (citing *HM Peachtree Corners I, LLC v. Panolam Indus. Int'l, Inc.*, No. 1:17-cv-1000, 2017 WL 3700304, at \*3 (N.D. Ga. Aug. 28, 2017) ("It is common in our Circuit for District Courts to dismiss requests for declaratory judgment when a plaintiff asserts a corresponding claim for breach of contract.")).

Resolution of Plaintiffs' breach of contract claim would entirely resolve the declaratory judgment relief sought by Plaintiffs. Determination of whether Defendants breached the Policy by "unlawfully withholding labor costs" from its ACV calculation (Compl. ¶97) will necessarily also resolve Plaintiffs' request that the Court "[e]nter a declaratory judgment, declaring that Defendants withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Plaintiffs and members of the class[.]" Compl. ¶105. Consequently, Plaintiffs' duplicative declaratory judgment claim should be dismissed.

**D.     Because the face of Plaintiffs' complaint demonstrates that Rule 23 class action requirements cannot be met, Plaintiffs' class allegations should be struck.**

"When the unsuitability of class treatment as to one or more issues is clear from the face of the complaint, and when entertaining a motion to strike does not 'mirror the class certification inquiry,' motions to strike those allegations may be properly filed and considered before expensive and exhaustive discovery is undertaken." *Goff v. La Salle Bank, N.A.*, No. 09-CV-147-TMP-WMA, 2009 WL 10688475, at \*3 (N.D. Ala. Sept. 16, 2009) (quoting *In re Initial Public Offering Securities Litigation*, No. 21-MC-92(SAS), 2008 WL 2050781, at \*2 (S.D.N.Y. May 13, 2008)) and citing *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 (D.N.J. 2003) ("A defendant may move to strike class action allegations prior to discovery in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be

met.")); *see* FED. R. CIV. PROC. 23(d)(1)(D).

> **1.    If the Court concludes that the Policy is ambiguous (which Defendants contest), then Plaintiffs' class allegations should be struck because, based on the complaint itself, the requirements of a class action cannot be met as extrinsic evidence is admissible on each claim, which defeats predominance.**

If this Court should conclude that the Policy is ambiguous (which Defendants contest and, of course, does not equate to liability), the Alabama Supreme Court "has held that the conclusion that a contract was ambiguous was fatal to a claim for class certification." *Alfa Life Ins. Corp. v. Johnson*, 822 So. 2d 400, 405 (Ala. 2001); *see Mann v. GTE Mobilnet of Birmingham, Inc.*, 730 So. 2d 150, 155 (Ala. 1999); *Lackey v. Central Bank of the South*, 710 So. 2d 419, 421–22 (Ala. 1998). Under Alabama law, "[i]f one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity." *Alfa*, 822 So. 2d at 405 (quoting *Voyager Life Ins. Co., Inc. v. Whitson*, 703 So. 2d 944, 949 (Ala. 1997)); *see Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014) ("Extrinsic evidence of the parties' subjective understanding is not consulted unless the contract is ambiguous."); *Pierce-Dickerson Bonding Co. v. S. Guar. Ins. Co.*, 503 So. 2d 1219, 1221 (Ala. 1987) (where "policy language is ambiguous[,]" "[t]he trier of fact is entitled to consider extrinsic evidence to determine" the policy's construction "within the actual intend and understanding of the parties when the policy was issued"); Kenneth S. Abraham, *Plain Meaning, Extrinsic Evidence, and Ambiguity: Myth and Reality in Insurance Policy Interpretation*, 25 CONN. INS. L.J. 329 (Spring 2019) (addressing "myth" that "ambiguous policy provisions" almost always construed against insurer under "doctrine of *contra proferentum*" when "in reality, a finding of ambiguity merely authorized the introduction of otherwise-inadmissible extrinsic evidence to aid in interpreting the ambiguous provision").

If "the parties' expressed intention" "can be otherwise ascertained[,]" the rule that ambiguous contracts are to be construed in favor of insureds" may not "be permitted to frustrate the parties' expressed intention[.]" *Baldwin*, 181 So. 3d at 1042 (quoting 43 Am. Jur. 2d *Insurance* §299 (2013)) and citing *Tinker*, 410 A.2d at 553–54 with explanatory parenthetical "discussing, to like effect, the use of the language of the contract as a whole *as well as extrinsic evidence* in the construction of an insurance agreement" (emphasis added)).

Further, "if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of *contra proferentem*, any ambiguity must be construed against the drafter of the contract." *FabArc Steel Supply, Inc. v. Composite Const. Sys., Inc.*, 914 So. 2d 344, 357–58 (Ala. 2005) (quoting *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000)). "However, '[t]he rule of *contra proferentem* is generally a rule of last resort that should be applied only when other rules of construction have been exhausted." *Id.* (quoting *Lackey v. Central Bank of the South*, 710 So. 2d 419, 422 (Ala. 1998)).

"Where factual issues arise, the resolution of the ambiguity becomes a task for the jury." *Alfa*, 822 So. 2d at 405; *see Huggins*, 423 So. 2d at 151 (if "court determines the contract to be ambiguous and one of the parties makes an offer of proof as to surrounding facts and circumstances which would clarify the contract's meaning," then "it is within the province of the jury to ascertain of the contract upon proper instructions by the court." (quoting *Alpine Const. Co. v. Water Works Bd.*, 377 So.2d 954, 956 (Ala. 1979)).

"Even the most common of contractual questions—those arising, for example, from the alleged breach of a form contract—do not guarantee predominance if individualized extrinsic evidence bears heaving on the interpretation of the class members' agreements." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176–77 (11th Cir.

2010). "The evidence necessary to guide the jury in determining the meaning of an ambiguous contract provision includes the surrounding circumstances and the construction the parties gave the language." *Mann*, 730 So. 2d at 154–55. "The conclusion that the contract is ambiguous is fatal to [the plaintiff's] claim" for "[h]e cannot satisfy the commonality requirement of Rule 23(a)(2) as to questions of fact, because the evidence necessary to resolve those questions of fact will vary from case to case." *Id.*

Further, predominance "is difficult to show in the context of an action alleging breach of contract when the contract at issue is deemed ambiguous; in such a case, each individual class member may have differing interpretations of the ambiguous contract language and, thus, the finder of fact will have to determine how each individual plaintiff interpreted the language, resulting in determinations of individual issues predominating over the common issues." *Hall v. Envtl. Litig. Grp.*, 248 So. 3d 949, 957–58 (Ala. 2017). As a result, a finding of ambiguity as to whether the Policy provides that labor costs for replacing damaged property are depreciated when determining ACV would be "fatal to a claim for class certification." *Id.* (quoting *Univ. Fed. Credit Union v. Grayson*, 878 So. 2d 280, 293 (Ala. 2003)).

### 2. Plaintiffs' assertion that they may alternatively seek "issues classes" under Rule 23(c)(4) fails.

Plaintiffs assert that, "in the alternative," they may seek "certification of issues classes" under Rule 23(c)(4) to "maintain[] . . . a class action with respect to particular issues[.]" Compl. ¶91. "[C]ourts have emphatically rejected attempts to use the (c)(4) process for certifying individual issues as a means for achieving an end run around the (b)(3) predominance requirement." *Fisher v. Ciba Specialty Chem. Corp.*, 238 F.R.D. 273, 317 (S.D. Ala. 2006) ; *see Ray v. Judicial Correction Servs., Inc.*, 333 F.R.D. 552, 581 (N.D. Ala. 2019) (quoting *Fisher* and concluding proposed Rule 23(c)(4) certification "would be an end run around

29

23(b)(3)"). Plaintiffs offer no "specific reasons in support of their request for issue certification." *Ray*, 333 F.R.D. at 581. The Court should "emphatically reject" Plaintiffs attempt to seek "certification of individual issues" in order to use "(c)(4) to sever issues until the common issues predominate over the individual issues." *Fisher*, 238 F.R.D. at 317.

Because the "face of the complaint" is clear that "the unsuitability of class treatment as to one or more issues" of predominance and commonality under Rule 23(b) and issues classes under Rule 23(c), the Court should strike Plaintiffs' class allegations prior to discovery because "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Goff*, WL 10688475, at *3 (parenthetical quoting *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 (D.N.J. 2003)); *see* FED. R. CIV. PROC. 23(d)(1)(D).

## IV.   CONCLUSION

For each of the reasons stated above, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and strike Plaintiffs' class allegations under Rule 23(d)(1)(D).

Respectfully submitted,

/s/ *Mary-Ellen King*_____
Roger D. Higgins (Texas Bar No. 09601500)*
Elizabeth Lee Thompson (Texas Bar No. 00788290)*
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201-2832
Telephone: (214) 871-8229
Fax: (214) 871-8209
rhiggins@thompsoncoe.com
lthompson@thompsoncoe.com
* Pro Hac Vice Application Filed

Mary-Ellen King (ASB-7221-M72H)
THOMPSON, COE, COUSINS & IRONS, L.L.P.
701 Brazos Street, Suite 1500
Austin, Texas 78701
Telephone: (512) 827-2305
mking@thompsoncoe.com

Kermit L. Kendrick (ASB-3553-T41K)
BURR & FORMAN LLP
Wells Fargo Tower, Suite 3400
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Fax: (205) 244-5665
kkendric@burr.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

This is to certify that on this 25th day of October, 2021, a true and correct copy of the

foregoing was delivered to the following counsel for Plaintiff via e-service:

William D. Buckley
J. Brandon McWherter
MCWHERTER SCOTT BOBBITT, PLC
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067
615.354.1144
trey@msb.law
brandon@msb.law

Erik D. Peterson
MEHR, FAIRBANKS & PETERSON
TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
859.225.3731
edp@austinmehr.com

T. Joseph Snodgrass
LARSON KING, LLP
30 E. 7th Street, Suite 2800
St. Paul, MN 55101
651.312.6500
jsnodgrass@larsonking.com

/s/ *Mary-Ellen King*
Mary-Ellen King